UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WILLIAM ANDRE OWENS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DEUTSCHE BANK NATIONAL | ) No. 4:19 CV 1717 RWS |
| TRUST COMPANY, TRUSTEE FOR | ) |
| AMERIQUEST MORTGAGE | ) |
| SECURITIES, INC., ASSET-BACKED | ) |
| PASS-THROUGH CERTIFICATES, | ) |
| SERIES 2004-R8 | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM & ORDER**

This matter is before me on Defendant Deutsche Bank National Trust Company's motion for summary judgment. ECF No. [71]. Plaintiff William Andre Owens argues that there are material facts regarding his interest in the property still in dispute, precluding summary judgment. For the reasons set forth below, I will grant Deutsche Bank's motion.

**I.    BACKGROUND**

On June 28, 2002, the property located at 4478 Papal Drive, Florissant, Missouri (the "Property") was conveyed by General Warranty Deed to Ava Ford.[1]

---

[1] The information in this section is taken from the Defendant's Statement of Uncontroverted Material Facts, ECF No. [73], to the extent the Plaintiff admitted to them. Additional details are taken from the Plaintiff's Statement of Additional Uncontroverted Material Facts. ECF No. [76].

Def. Statement of Uncontroverted Material Facts (SUMF), ECF No. [73], ¶ 1. That same day, Ava Ford granted a Deed of Trust to First Horizon Home Loan Corporation ("First Horizon"), using the Property as security for a promissory note in the amount of $108,300. Def. SUMF, ECF No. [73], ¶ 2. Two days later, on June 30, 2002, Ava Ford married Plaintiff, William Andre Owens. Def. SUMF, ECF No. [73], ¶ 3. A few days later, on July 10, 2002, the General Warranty Deed and Deed of Trust for the Property were recorded. Def. SUMF, ECF No. [73], ¶ 2. Approximately six months after their wedding, Plaintiff signed an Assent to Execution of Deeds and Waiver of Marital Rights, which provided in relevant part that "I…do hereby expressly assent to any conveyances of real estate made by my said spouse at any time and acknowledge and state that any such conveyances are not to be deemed to be in fraud of my marital rights. I hereby waive any right to make any legal or equitable claim against such property now or at any future time." Def. SUMF, ECF No. [73], ¶ 5 & Ex. 4. That same day, Ava signed a Quit Claim Deed conveying the property to herself in her married name, Ava Ford-Owens. Def. SUMF, ECF No. [73], ¶ 7 & Ex. 5. She also signed a Deed of Trust in favor of First Horizon, which pledged the Property as security for a promissory note in the amount of $109,096. Def. SUMF, ECF No. [73], ¶ 8 & Ex. 6. All of these documents were recorded on March 18, 2003.  Def. SUMF, ECF No. [73], ¶ 5-8. On April 11, 2003, First Horizon recorded a Full Deed of Release, releasing the

Deed of Trust dated June 28, 2002. Def. SUMF, ECF No. [73], ¶ 9 & Ex. 7. Shortly thereafter, on July 29, 2003, Ava signed a Deed of Trust in favor of CitiFinancial Services, Inc., using the property as security for another promissory Note in the amount of $15,621.06. Def. SUMF, ECF No. [73], ¶ 10 & Ex. 8. It was recorded on December 23, 2003.  Def. SUMF, ECF No. [73], ¶ 10. In the interim, Ava signed a Deed of Trust in favor of First Horizon, using the Property as security for a promissory Note in the amount of $109,934.00. Def. SUMF, ECF No. [73], ¶ 11 & Ex. 9. This Deed of Trust was also signed by Plaintiff. It was recorded on October 7, 2003. Def. SUMF, ECF No. [73], ¶ 12.

Ava signed one last note on the property on February 9, 2004. Def. SUMF, ECF No. [73], ¶ 13 & Ex. 11. It was an Adjustable Rate Note in favor of Ameriquest Mortgage Company ("Ameriquest") in the amount of $133,200. Def. SUMF, ECF No. [73], ¶ 13 & Ex. 11. On the same day, she also signed a Deed of Trust in favor of Ameriquest pledging the Property as security. Def. SUMF, ECF No. [73], ¶ 13 & Ex. 11.  The Deed of Trust was recorded on March 3, 2004 and a Full Deed of Release was recorded on March 5, 2004, releasing the Deed of Trust dated August 25, 2004. Def. SUMF, ECF No. [73], ¶ 13, 24, & Ex. 19. Plaintiff's initials and signature appear on the Ameriquest Deed of Trust, but Plaintiff avers that he did not sign or initial the document. Pl. SUMF, ECF No. [76], ¶ 1-3. He states that he is not aware of how his signature came to be on the Deed of Trust. Pl.

3

SUMF, ECF No. [76], ¶ 1-3. Plaintiff claims he was unaware of the Ameriquest Deed of Trust, until September 2015. Pl. SUMF, ECF No. [76], ¶ 1-3. Between the signing of the Deed of Trust and the date on which Plaintiff became aware of it, Ameriquest executed an Assignment of Mortgage/Deed of Trust to Deutsche Bank National Trust Company, Trustee of Ameriquest Mortgage Securities, Inc., Asset-Backed Pass-Through Certificates, Series 2004-R8 (the "Bank"). Def. SUMF, ECF No. [73], ¶ 28-29 & Ex. 29. The Assignment was recorded on February 27, 2009. Def. SUMF, ECF No. [73], ¶ 28-29 & Ex. 29.

Throughout their marriage, the couple used the Property as their home and Plaintiff contributed funds to the Property. Pl. SUMF, ECF No. [76], ¶ 4. But the title and debt were kept solely in Ava's name. Def. SUMF, ECF No. [73], ¶ 1, 16-17. When Plaintiff and Ava's marriage was dissolved on January 27, 2015, the Divorce Decree provided that the Property was nonmarital property owned by Ava. Def. SUMF, ECF No. [73], ¶ 30 & Ex. 22.

After their divorce Plaintiff and Ave were notified by the Boyd Law Group, L.C. ("BLG"), which had been appointed as a trustee under the Ameriquest Deed of Trust on August 14, 2015, that a default had occurred in the payment of the mortgage and a foreclosure sale was scheduled for September 24, 2015. Def. SUMF, ECF No. [73], ¶ 36 & Ex. 24. BLG did not foreclose on the Property in September 2015 because they did not provide notice of the foreclosure sale to

4

CitiFinancial Services, Inc, which had recorded a Request for Notice of Sale in August 2015. Def. SUMF, ECF No. [73], ¶ 37 & Ex. 26. Plaintiff and Ava were again notified by BLG that a default had occurred and that the Property would be sold at a foreclosure sale on November 17, 2015. Def. SUMF, ECF No. [73], ¶ 39 & Ex. 26. This sale was postponed because Plaintiff submitted a Request for Mortgage Assistance/Hardship Affidavit to the Bank's loan servicer. Def. SUMF, ECF No. [73], ¶ 39 & Ex. 26. Then on December 27, 2015, Ava signed a Quit Claim Deed conveying the Property to Plaintiff. Def. SUMF, ECF No. [73], ¶ 40 & Ex. 28. The Deed was recorded on January 12, 2016. Def. SUMF, ECF No. [73], ¶ 40 & Ex. 28. Plaintiff knew at the time of the conveyance that the Ameriquest Deed of Trust was a lien on the property and that it would need to be paid. Def. SUMF, ECF No. [73], ¶ 41.

In July 2016, Millsap & Singer, P.C. was appointed as the successor trustee. Millsap & Singer notified Ava and Plaintiff that a default had occurred and that the Property would be sold at a foreclosure sale on August 12, 2016.  Def. SUMF, ECF No. [73], ¶ 42-43, Ex. 30. Shortly before the scheduled sale, on August 3, 2016, Plaintiff submitted another Request for Mortgage Assistance/Hardship Affidavit to the Bank's loan servicer. Def. SUMF, ECF No. [73], ¶ 44 & Ex. 31. Plaintiff also filed suit in the Circuit Court of St. Louis County, on August 4, 2016, requesting a decree that he owned the Property absolutely and enjoining the named

5

defendants from asserting any right, title, lien, or interest in the Property. Def. SUMF, ECF No. [73], ¶ 47 & Ex. 32. Because of the lawsuit, the foreclosure sale was postponed. Def. SUMF, ECF No. [73], ¶ 47 & Ex. 32. On January 17, 2017, the Plaintiff's lawsuit was dismissed without prejudice. Def. SUMF, ECF No. [73], ¶ 48 & Ex. 33. Once again on February 3, 2017, Plaintiff and Ava were notified by Millsap & Singer that a default had occurred, and the Property would be sold at a foreclosure sale on February 28, 2017. Def. SUMF, ECF No. [73], ¶ 50 & Ex. 34. On February 17, 2017, Plaintiff filed suit in the Circuit Court of St. Louis County seeking to quiet title to the Property, contending the Ameriquest Deed of Trust was invalid and unenforceable. Def. SUMF, ECF No. [73], ¶ 50 & Ex. 35. On February 28, 2017, the foreclosure sale went ahead as indicated in the notice to the Plaintiff and Ava. Def. SUMF, ECF No. [73], ¶ 51 & Ex. 36. The Property was sold and conveyed to the Bank for $82,450, as reflected by the Deed Under Foreclosure recorded on March 3, 2017. Def. SUMF, ECF No. [73], ¶ 51 & Ex. 36. The quiet title action filed on February 17, 2017, was dismissed with prejudice in April 2018. Def. SUMF, ECF No. [73], ¶ 53.

On July 17, 2018, the Bank filed an unlawful detainer action against Plaintiff, and others believed to be occupying the Property, in the Circuit Court of St. Louis County, Case No. 18SL-AC19866. Def. SUMF, ECF No. [73], ¶ 54 & Ex. 37. And on August 21, 2018, the Plaintiff filed a Chapter 13 Voluntary Petition

6

with the United States Bankruptcy Court for the Eastern District of Missouri, Case No. 18-45367-399. Def. SUMF, ECF No. [73], ¶ 55. On September 13, 2018, the Bank filed an Expedited Notice of Hearing and Motion to Dismiss, or in the Alternative for Relief from the Automatic Stay, in the bankruptcy case, contending the Property is not property belonging to the debtor. Def. SUMF, ECF No. [73] ¶ 56-61. On September 18, 2018, the Bankruptcy Court entered an Order dismissing the case. Def. SUMF, ECF No. [73] ¶ 56-61 & Ex. 38.

On September 20, 2018, Plaintiff filed suit against the Bank and others in the District Court of the Eastern District of Missouri, Case No. 4:18-cv-1601-HEA. Def. SUMF, ECF No. [73], ¶ 62 & Ex. 39. The case was dismissed on March 11, 2019. Def. SUMF, ECF No. [73], ¶ 63 & Ex. 40. Shortly thereafter, the state court issued a Judgment for the Bank in its Unlawful Detainer Action, which required Plaintiff to vacate the Property. He did not.  Def. SUMF, ECF No. [73], ¶ 64-64 & Ex. 41. He then filed this action in the Circuit Court of St. Louis County, on May 17, 2019, for wrongful foreclosure, declaratory judgment, fraudulent misrepresentation, a motion to set aside the sale as void, and negligence per se. The Bank removed the case to federal court on June 19, 2019.  Ava is currently living in Georgia and is not a party to this case. Def. SUMF, ECF No. [73], ¶ 69.

## II. LEGAL STANDARD

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving parties, demonstrates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Med. Ctr.-W. Campus, 160 F.3d 484, 486 (8th Cir. 1998), abrogated by Torgerson v. City of Rochester, 643 F.3d 1031 (8th Cir. 2011) (citing Fed. R. Civ. P. 56(c)).  The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file that it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  When such a motion is made and supported by the movant, the nonmoving parties may not rest on their pleadings but must produce sufficient evidence to support the existence of the essential elements of their case on which they bear the burden of proof.  Id. at 324.

## III. DISCUSSION

Defendant argues it is entitled to judgment as a matter of law because it legally purchased the Property at the foreclosure sale on February 28, 2017, and the Plaintiff's only interest in the Property was subordinate to the Ameriquest Deed of Trust. The Plaintiff argues that the Ameriquest Deed of Trust was not properly

signed and was therefore void. Since the foreclosure was based on the default on the Ameriquest Deed of Trust, Plaintiff argues the foreclosure was wrongful and his interest in the Property is superior. Plaintiff's first four claims all turn on which party has superior title to the Property. His last claim is based on the Real Estate Settlement Procedures Act (RESPA).

*A. Wrongful Foreclosure*

"A tort action for damages for wrongful foreclosure lies against a mortgagee only when the mortgagee had no right to foreclose at the time foreclosure proceedings were commenced." Dobson v. Mortg. Elec. Registration Sys./GMAC Mortg. Corp., 259 S.W.3d 19, 22 (Mo. Ct. App. 2008) (internal citations omitted). "A plaintiff seeking damages in a wrongful foreclosure action must plead and prove that when the foreclosure proceeding was begun, there was no default on its part that would give rise to a right to foreclose." Id.

Here, Plaintiff does not allege that there was no default. In fact, he admits that Ava Ford-Owens defaulted on the loan. Instead his wrongful foreclosure action is premised on his assertion that the Deed of Trust was invalid because he did not sign it and it was therefore executed in fraud of his martial rights. But this cannot serve as the basis for a wrongful foreclosure action. See Id. Even if it could serve as the basis of a wrongful foreclosure action, Defendant would still be entitled to summary judgment because the Ameriquest Deed of Trust was not

9

invalid or void, as discussed in the following section. Accordingly, I will grant the Defendant's Motion for Summary Judgment as to this claim.

*B. Declaratory Judgment*

Defendant is entitled to summary judgment on Plaintiff's Declaratory Judgment claim because it is the lawful owner of the property. Defendant incorrectly asserts that Plaintiff never had any marital rights in the property because Ava Ford-Owens purchased the property solely in her name prior to their marriage. See McDonald v. McDonald, 814 S.W.2d 939, 948 (Mo. Ct. App. 1991). But this misstatement is not fatal to its claim because any marital rights Plaintiff had in the Property were waived and/or extinguished by his divorce.

First, Plaintiff signed an Assent to Execution of Deeds and Waiver of Marital Rights on February 21, 2003. The Plaintiff claims that he thought this was a temporary waiver, but "a contract is only ambiguous, and in need of a court's interpretation, if its terms are susceptible to honest and fair differences." Ethridge v. TierOne Bank, 226 S.W.3d 127, 131 (Mo. 2007) (quoting State ex rel. Vincent v. Schneider, 194 S.W.3d 853, 860 (Mo. 2006)). "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." Id. (quoting Seeck v. Geico Gen. Ins. Co., 212 S.W.3d 129, 132 (Mo. 2007)). Here the language of the waiver is unambiguous. It states that Plaintiff "hereby

expressly assent[s] to any conveyances of real estate made by my said spouse at *any time* and acknowledge and state that any such conveyances are not to be deemed to be in fraud of my marital rights." Def. Statement of Material Facts, ECF No. [73-4] (emphasis added). It goes on to state that Plaintiff "hereby waive[s] any right to make any legal or equitable claim against such property *now or at any future time*." Def. Statement of Material Facts, ECF No. [73-4] (emphasis added). Additionally, all of the cases Plaintiff cites to support his proposition that the waiver was unconscionable or entered into unknowingly address postnuptial agreements and either deal with property purchased during the marriage or broad waivers of spousal rights. See Bell v. Bell, 360 S.W.3d 270, 279 (Mo. Ct. App. 2011) (holding that a wife's signature on multiple documents entitled waiver that purported to declare property as the husbands separate property were not valid); Hosmer v. Hosmer, 611 S.W.2d 32 (Mo. Ct. App. 1980) (holding that an antenuptial agreement waiving the wife's marital inheritance rights was invalid because it lacked consideration and did not fully disclose the husbands property). These cases are distinguishable since the Waiver and Assent is not a postnuptial agreement, is limited to a single listed property, and only waives Plaintiff's right to claim fraud on his marital rights under Mo. Rev. Stat. § 474.150. Finally, the waiver and assent was recorded with the recorder of deeds, so all individuals researching the status of the  property would have been aware of the Plaintiff's

Assent to Execution of Deeds and Waiver of Marital Rights and could have relied on it. Accordingly, even though Plaintiff did not sign the Deed of Trust, it was still valid and did not constitute fraud on his marital right.

Even if I assumed that Plaintiff did not sign the Ameriquest Deed of Trust and it was conveyed in fraud of his marital rights,[2] Defendant is still entitled to summary judgment. When a deed of trust is conveyed in fraud of an individual's marital rights, it is only voidable to the extent of the surviving spouses' rights. See Rose v. St. Louis Union Tr. Co., 99 Ill. App. 2d 81, 241 N.E.2d 16, 19 (Ill. App. Ct. 1968), aff'd, 43 Ill. 2d 312, 253 N.E.2d 417 (1969) (construing Mo. Rev. Stat. § 474.150); McDonald, 814 S.W.2d at 948. Therefore, if Plaintiff became a surviving spouse, he could have voided the Ameriquest Deed of Trust, at least to the extent of his marital rights in the property. But Plaintiff never became a surviving spouse and any marital rights he had in the Property were extinguished when he and Ava divorced. The Divorce Decree, which extinguished the Plaintiff's marriage and indicated that Ava was the owner of the Property, was dated January 27, 2015. Def. Statement of Material Facts, ECF No. [73-22] The foreclosure

---

[2] It is unclear if Defendant can establish that the conveyance constituted fraud on his marital right. In Missouri, although Mo. Rev. Stat. § 474.150(2) states that any conveyance is presumed to be fraud, the Missouri Supreme Court has stated, "Subsection 2 covers a broader field than subsection 1, in that the latter is confined to *gifts* in fraud of marital rights, whereas subsection 2 deals with all conveyances by a husband alone, presumably with or without consideration; but fraud is still necessary, as we construe the statute." Reinheimer v. Rhedans, 327 S.W.2d 823, 828–29 (Mo. 1959). Here Plaintiff alleges that his signature on the documents was forged, which if proven would be sufficient to establish fraud. However, since the issue is not material to the final disposition of this case, I need not decide the issue here.

proceedings did not begin until August 27, 2015. Def. Statement of Material Facts, ECF No. [73-24]  Therefore, the Ameriquest Deed of Trust was no longer subject to his marital rights at the time of the foreclosure.  Accordingly, his only claim to the property was the quitclaim deed conveyed to him by Ava on December 17, 2015. Def. Statement of Material Facts, ECF No. [73-28].  At that time, he took ownership of the property subject to the Ameriquest mortgage. Therefore, his interest was inferior to the deed of trust and the foreclosure sale was valid. Accordingly, I will grant Defendant's motion as to this claim.

*C. Fraudulent Misrepresentation*

    Plaintiff's third claim against the Defendant is for fraudulent misrepresentation. Plaintiff argues that Defendant fraudulently misrepresented that it had a legal right to foreclose on his property. He also states that Defendant fraudulently misrepresented that it was the legal holder of the note and lawfully executed deed of trust on Plaintiff's property. Plaintiff further argues that despite his request that Defendant present the note upon which the foreclosure was premised, Defendant failed to produce the note and Deed of Trust. Defendant argues that they had a legal right to foreclose because Ameriquest assigned the note and deed of trust to it.

    "In order to make a submissible case of fraudulent misrepresentation, a plaintiff must prove nine essential elements: (1) a representation; (2) its falsity; (3)

13

its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury." Hess v. Chase Manhattan Bank, USA, N.A., 220 S.W.3d 758, 765 (Mo. 2007) (citing Heberer v. Shell Oil Co., 744 S.W.2d 441, 443 (Mo. 1988); Trimble v. Pracna, 167 S.W.3d 706, 712–13 (Mo. 2005)). Therefore, in order to survive summary judgment the Plaintiff must demonstrate that there is a factual dispute pertaining to at least one element of the claim.  Both parties focus on the second element, falsity.

As discussed in the previous section, the Ameriquest Deed of Trust was valid.  Therefore, the only remaining question is whether the Defendant was the holder of the note at the time of the foreclosure.  Defendant attached the adjustable rate note and the Ameriquest Deed of Trust to their Statement of Material Facts. Def. Statement of Material Facts, ECF No. [73-11] and [73-12]. The Defendant also attached the Assignment of the Deed of Trust, by which Ameriquest assigned the Note and Deed of Trust to the Defendant on January 20, 2009. Def. Statement of Material Facts, ECF No. [73-21].  Plaintiff does not contest the validity of the assignment.  Accordingly, the Defendant was the legal holder of the note and deed

of trust at the time of foreclosure. Since the Plaintiff does not cite any other false statements made by the Defendant, the Defendant is entitled to summary judgment on this claim.

*D. Motion to Set Aside Sale as Void*

For the reasons discussed in the preceding sections, the Defendant is also entitled to summary judgment on the Plaintiff's motion to set aside the foreclosure sale as void.

*E. Negligence Per Se (RESPA)*

The Real Estate Settlement Procedures Act (RESPA) requires mortgage loan servicers to respond to certain borrower inquires, called "qualified written requests." Wirtz v. Specialized Loan Servicing, LLC, 886 F.3d 713, 715 (8th Cir. 2018).  If the mortgage loan servicer fails to properly respond to a qualified written request, the borrower is entitled to "any actual damages to the borrower as a result of the failure." 12 U.S.C. § 2605(f)(1)(A). "The borrower also may recover 'any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000.'" Id. (citing 12 U.S.C.  § 2605(f)(1)(B)).

Under the  express language of the statute,  civil liability is limited to "borrowers." 12 U.S.C. § 2605. Multiple courts have held that plaintiffs who are not borrowers lack standing to bring claims arising from foreclosure. See Sayles v.

15

BSI Fin. Servs., No. 4:15-CV-612 (CEJ), 2016 WL 304541, at *2 (E.D. Mo. Jan. 25, 2016) (collecting cases). Plaintiff was not a party to the loan, and therefore lacks standing under RESPA. Even if Plaintiff were a party to the loan his claim would not survive summary judgment because 12 U.S.C. § 2605(e) applies to loan servicers.  Deutsche Bank was not the servicer of the loan in question. Therefore, it cannot be liable under 12 U.S.C. § 2605(e). See McAndrew v. Deutsche Bank Nat. Tr. Co., 977 F. Supp. 2d 440, 445 (M.D. Pa. 2013). Finally, Plaintiff did not oppose Defendant's motion as to this claim and thus waived his argument. See City of Kennett, Missouri v. Envtl. Prot. Agency, 887 F.3d 424, 430 (8th Cir. 2018). Accordingly, I will grant Defendant's Motion as to this claim.

## IV.   CONCLUSION

Plaintiff's interest in the Property was taken subject to the Ameriquest Deed of Trust. The Ameriquest Deed of Trust was valid and was not subject to the Plaintiff's marital rights at the time of foreclosure. Therefore,  Plaintiff's claims that rely on his superior interest in the property fail. Additionally, because Defendant was not the servicer on the loan in question, it is not liable under 12 U.S.C. § 2605(e). Therefore, all of the Plaintiff's substantive claims fail. Accordingly, Plaintiff's claim for punitive damages must also fail and Defendant's Motion for Summary Judgment will be granted in its entirety.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion for summary judgment, ECF No. [71] is **GRANTED**.

A separate Judgment is issued this same date.

                                      _/s/ Rodney W. Sippel_
                                      RODNEY W. SIPPEL
                                      UNITED STATES DISTRICT JUDGE

Dated this 11th day of March 2021.